259 F.2d 202
 ST. LOUIS AMUSEMENT COMPANY, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Columbia Broadcasting System, Inc., KWK, Incorporated, 220 Television, Inc., Broadcast House, Inc., Intervenors.
 No. 14245.
 United States Court of Appeals District of Columbia Circuit.
 Argued May 12, 1958.
 Judgment Entered July 8, 1958.
 Opinion Filed August 28, 1958.
 Certiorari Denied November 17, 1958.
 
 See 79 S.Ct. 154.
 Mr. Russell Hardy, Sr., Washington, D. C., with whom Mr. Russell Hardy, Jr., Washington, D. C., was on the brief, for appellant.
 Mr. Warren E. Baker, General Counsel, Federal Communications Commission, with whom Mr. Richard A. Solomon, Assistant General Counsel, Federal Communications Commission, was on the brief, for appellee. Mr. Richard M. Zwolinksi, Counsel, Federal Communications Commission also entered an appearance for respondent.
 
 
 1
 Mr. Ambrose Doskow, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Mr. Leon R. Brooks, Washington, D. C., was on the brief, for intervenor Columbia Broadcasting System, Inc.
 
 
 2
 Messrs. Bernard Koteen and Alan Y. Naftalin, Washington, D. C., were on the brief for intervenor 220 Television, Inc.
 
 
 3
 Messrs. James A. McKenna, Jr. and Vernon L. Wilkinson, Washington, D. C., were on the brief for intervenor Broadcast House, Inc.
 
 
 4
 Mr. William C. Koplovitz, Washington, D. C., entered an appearance for intervenor KWK, Inc.
 
 
 5
 Before EDGERTON, Chief Judge, and WILBUR K. MILLER and BURGER, Circuit Judges.
 
 
 6
 BURGER, Circuit Judge.
 
 
 7
 The Commission held a comparative hearing to determine which of five applicants should receive a construction permit for channel 11 in St. Louis. The applicants were (1) Columbia Broadcasting System, Inc.; (2) 220 Television, Inc.; (3) St. Louis Telecast, Inc.; (4) Broadcast House, Inc.; and (5) appellant. Appellant ceased its active participation at an early stage, anticipating, correctly as it developed, that Columbia Broadcasting System, with its vast experience, would be found the best qualified. In August, 1954, the hearing examiner declared appellant in default. Columbia Broadcasting System did prevail and in March, 1957, was granted a construction permit; the three unsuccessful applicants appealed to this court. Appellant did not appeal. Meanwhile, Columbia Broadcasting System began construction under its permit.
 
 
 8
 Columbia Broadcasting System then changed its plans; in September, 1957, it contracted to buy the assets and license of an existing station then telecasting on channel 4 in St. Louis, and laid plans to telecast on that channel instead of on channel 11. Having no further use for channel 11, Columbia Broadcasting System contracted to assign its construction permit to 220 Television, on condition that 220 Television would pay $200,000 to St. Louis Telecast and $200,000 to Broadcast House, and provided that the pending appeal from the award of channel 11 to Columbia Broadcasting System be abandoned. Both transfers were made subject to Commission approval.
 
 
 9
 The Commission gave public notice of the proposed transfers of channels 4 and 11, and in the absence of opposition, approved them in October, 1957. Appellant then promptly protested, and demanded that the comparative hearing be re-opened and a new license permittee selected. The Commission dismissed appellant's case on the grounds that it had no standing to challenge the disposition of channel 11. We agree with the Commission that appellant had no standing to protest and has no standing on appeal and the appeal is therefore dismissed.
 
 
 10
 The Commission, relying on the legislative history, contends that under section 310(b), as amended in 1952, when a construction permittee seeks to assign its permit, the Commission is empowered to consider only whether the assignee selected by the permittee is qualified; and that the Commission has no power to consider the comparative qualifications of prior unsuccessful applicants, even when, as in this case, the assignment follows close on the heels of a comparative hearing.[1] If the Commission's present interpretation is correct, the 1952 amendment operates to allow a private entity to decide who shall receive the permit, without regard to which one of these applicants the Commission has selected on a comparative basis.[2]
 
 
 11
 Whether Congress intended this result, or even anticipated the possibility, is not clear from the legislative history.[3] This interpretation of the 1952 amendment could conceivably open the door to something not unlike the "trafficking in licenses" long since disapproved. If this interpretation is correct, there may be a serious gap in the statutory scheme to which Congressional attention should be directed. It is difficult to rationalize a sound justification for payment of $400,000 by the assignee of the original permittee to the two unsuccessful applicants for abandoning their appeals in this court.[4] The Commission should (if it does not under the existing statute) have power to inquire into the possible impact of these payments on the public interest. The considerations which lead courts to encourage settlement of private litigation do not apply undiluted to "settlement" of appeals from the Commission, having in mind the important public interest factors dealt with.
 
 
 12
 Appeal dismissed.
 
 
 
 Notes:
 
 
 [1]
 "No construction permit or station license * * * shall be transferred * * * to any person except upon application to the Commission and upon finding by the Commission that the public interest, convenience, and necessity will be served thereby. Any such application shall be disposed of as if the proposed transferee or assignee were making application under section 308 [of this title] for the permit or license in question; but in acting thereon the Commission may not consider whether the public interest, convenience, and necessity might be served by the transfer, assignment, or disposal of the permit or license to a person other than the proposed transferee or assignee." 66 Stat. 716 (1952), 47 U.S.C.A. § 310(b), amending 48 Stat. 1086 (1934)
 For several years prior to the 1952 amendment, the Commission had followed a procedure (the so-called AVCO procedure) which gave it power to veto a proposed license transfer on the ground that the licensee's assignee was less qualified to operate the station than some other person who was interested in the station. The 1952 amendment was designed to restrict the Commission's control solely to the question whether the licensee's assignee was qualified, without regard to the comparative qualifications of any other applicant. See note 3 infra.
 Whereas the 1934 section 310(b) spoke only of licenses, the 1952 amendment covers both licenses and construction permits.
 
 
 [2]
 Without suggesting that it occurred in this case, the obvious self interest of an original permittee in these circumstances in making the selection of an assignee might well be to select not thestrongest of the unsuccessful applicants but the weakest, since the assignee would thereafter be a competitor.
 
 
 [3]
 See S.Rep. No. 44, 82d Cong., 1st Sess. 8 (1951); Hearings Amending Communications Act of 1934, House Interstate & Foreign Commerce Committee, 82d Cong., 1st Sess. 280, 305-6, 354 (1951)
 
 
 [4]
 Cf. Clarksburg Publ. Co. v. F.C.C., 1955, 96 U.S.App.D.C. 211, 225 F.2d 511